# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| SETH ROGERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 2020-0969-PAF |
| | ) |
| ITY LABS CORP., JOSÉ CONG, | ) |
| ROLAND HESS, E.ON SE, INNOGY | ) |
| SE, FUTURE ENERGY VENTURES | ) |
| MANAGEMENT GmbH (f/d/b/a | ) |
| INNOGY INNOVATION GmbH), and | ) |
| FEV US LLC (f/d/b/a INNOGY NEW | ) |
| VENTURES LLC), | ) |
| | ) |
| Defendants. | ) |

## ORDER ADDRESSING MOTIONS TO DISMSS

WHEREAS:[1]

A.      Plaintiff Seth Rogers, a California resident, is the co-founder of iTy Labs Corp. ("iTy" or the "Company") and owns approximately 45% of the Company's shares.[2]  Rogers was a member of the Company's board of directors (the "Board") until his removal by stockholder written consent, effective as of March 20, 2017.[3]

---

[1] Unless otherwise specified, the facts recited in this Order are drawn from the Verified Complaint (the "Complaint" or "Compl.") and documents integral thereto.  Exhibits attached to the Complaint will be cited as "Ex."

[2] Compl. ¶ 1.

[3] Ex. E (second Whereas clause).

B.     Defendant iTy is a Delaware corporation based in San Jose, California.[4] iTy was formed as a California corporation in 2014[5] "to provide software as a service to assist companies to better manage their workforce."[6]   The Company was reincorporated in Delaware in 2015.[7]

C.     Defendant José Cong co-founded iTy with Rogers.[8]   Cong was iTy's chief executive and chief financial officer, owned shares in the Company, and served on its Board during all relevant times.[9]

D.     Defendant FEV US LLC ("FEV US" or "Innogy NV") is a Delaware limited liability company based in California.[10]   FEV US previously conducted business as RWE New Ventures LLC and, during the times relevant to this action, as Innogy New Ventures LLC.[11]   FEV US owns 1,174,568 shares of iTy's Series A preferred stock.[12]

---

[4] *Id.* ¶ 2.

[5] *Id.* ¶ 13.

[6] *Id.* ¶ 14.

[7] *Id.* ¶ 16.

[8] *Id.* ¶ 3.

[9] *Id.*

[10] *Id.* ¶ 4.

[11] *Id.*

[12] *Id.* ¶¶ 49, 51.

2

E.     The remaining entity defendants reside in the ownership chain of FEV US.  Defendant Future Energy Ventures Management GmbH ("FEVMG") is a German corporation and the parent of FEV US.[13]  Defendant Innogy SE, a German corporation, is the parent of FEVMG, and defendant E.ON SE is the parent company of Innogy SE.[14]  Acting through FEVMG, Innogy SE used FEV US "to conduct business on Innogy SE's behalf in California" during all times relevant herein.[15]  E.ON SE, FEVMG, Innogy SE, and FEV US are together referred to as "Innogy."

F.     Defendant Roland Hess served on the iTy Board from March 20, 2017 until at least February 20, 2019.[16]  During this time, he was also an employee of Innogy SE.[17]

G.     When Rogers and Cong incorporated the company in Delaware in May 2015, Rogers assigned to iTy the intellectual property for Plause (the "IP").[18]  In exchange for the IP, Rogers received 2,000,000 shares of iTy common stock pursuant to a Common Stock Purchase Agreement ("CSPA").[19]  iTy completed a first round of financing in July and August 2015, which valued the Company at $8

---

[13] *Id.* ¶ 6.

[14] *Id.* ¶ 5.

[15] *Id.* ¶ 7.

[16] *Id.* ¶ 8.

[17] *Id.*

[18] *Id.* ¶¶ 16–18.

[19] *Id.* ¶ 18; Ex. B.

million.[20]  Cong also invested.[21]  Despite these and subsequent cash infusions, iTy faced a "funding crisis"[22] and "no imminent business."[23]

H.      "In or about early October 2016, and by no later than October 11, 2016," Rogers and Cong "reached an oral agreement to dissolve and wind up the Company" (the "Oral Agreement").[24]  Rogers agreed to "step away from his full-time involvement with the Company and instead manage and assist the Company's employees in their transition to new employment."[25]  Cong, in turn, agreed to "proceed with the wind up and orderly dissolution of iTy with the assistance of the Company's corporate counsel" and to "keep iTy operational for a couple of weeks for the sole purpose of allowing the last of iTy's employees to off-board."[26]

I.      While Rogers "immediately reduced his day-to-day involvement with the business," the Oral Agreement did not require him to resign from the Board.[27] In an October 11, 2016 email to Damien Weiss, the Company's outside counsel at Wilson Sonsini Goodrich & Rosati ("WSGR"), Rogers requested to be included in

---

[20] Compl. ¶ 20.

[21] *Id.*

[22] *Id.* ¶ 28.

[23] *Id.* ¶ 28.

[24] *Id.* ¶ 29.

[25] *Id.* ¶ 30.

[26] *Id.* ¶ 31.

[27] *Id.* ¶ 32; *see id.* ¶ 30.

"any discussions of company business while I'm on the board."[28]  Because Cong had "revoked Rogers' access to the Company email and Google apps,"[29] Rogers asked Weiss to use Rogers's personal email address for future communications.[30] Rogers maintains that he received no news about "iTy's business, or the wind-up and dissolution process" from Cong, iTy, or WSGR in the following weeks.[31]

J.  Cong, meanwhile, sought funding to keep iTy operational.  On October 6, 2016, Cong emailed Florian Kolb, a contact at Innogy, to solicit interest in investing in iTy.[32]  On October 12, 2016, Kolb responded "with an idea I would like to discuss with you, Talal and [Hess] that could lead to what you are looking for."[33] In an October 16, 2016 email, Kolb elaborated that Innogy was open to investing in iTy to support an effort by Hess "to spin-off his activities into a new venture" if "we can demonstrate a strategic bridge and combination between what you guys [at iTy] are doing and what [Hess] is up to."[34]  Both Cong and Hess reacted positively to the idea; on November 7, 2016, Kolb proposed a dinner "to talk deal."[35]

---

[28] Ex. D.

[29] Compl. ¶ 39.

[30] Ex. D.

[31] Compl. ¶ 34.

[32] Ex. H.

[33] *Id.*

[34] *Id.*

[35] *Id.*

K.    In November 2016, Rogers learned at a social gathering that, "with the assistance of WSGR," Cong "was covertly continuing to operate the business of iTy, while simultaneously excluding Rogers from all of the Company's dealings, communications, and decisions."[36]  Among other "clandestine" activities, Cong had refrained from "lay[ing] off all iTy employees," hired a new sales manager, and was soliciting bids from potential investors for a new round of financing.[37]

L.    On January 30, 2017, stockholders purportedly holding a majority of iTy's voting power executed a written consent removing Rogers from the Board.[38]

M.    On February 17, 2017, Rogers filed his original California Complaint against iTy, Cong, and "Does 1-25" in the Superior Court of California, Santa Clara.[39]

---

[36] Compl. ¶ 36.

[37] *Id.* ¶ 37.

[38] *Id.* ¶ 41; Ex. E (first Whereas clause).

[39] Ex. 1 to FEV US's Opening Br.  The complaint asserted claims against Cong for (1) fraud/intentional misrepresentation; (2) concealment; (3) negligent misrepresentation; (4) breach of fiduciary duty; (5) breach of contract; and (6) unjust enrichment.  The complaint also sought a declaratory judgment that (7) (a) Rogers remains a Board member; (b) Rogers's stock continues to vest under the CSPA; (c) iTy's option to repurchase Rogers's shares has not been triggered; and (d) iTy is prohibited from prepaying certain promissory notes.  The Complaint also sought (8) to enforce stockholder information rights under the California Corporations Code and (9) injunctive relief against all Defendants.  *Id.*

N.      On March 19, 2017, iTy exercised an option under the CSPA to repurchase from Rogers the unvested shares of the Company's common stock.[40] Rogers alleges that the share repurchase violated the terms of the CSPA.[41]

O.      On March 20, 2017, the Board, then consisting of Cong alone, executed a series of resolutions (the "March Resolutions"). The March Resolutions contemplated a sale of iTy stock to Innogy. Among other things, the March Resolutions authorized additional shares of common stock and preferred stock, the latter to be designated as "Series A Preferred Stock."[42] In one of the resolutions, Cong, as the sole director, expanded the Board to a three-director board, with one directorship to be "designated by Innogy."[43] Thereafter, for purposes of the claims asserted in this action, the board consisted of Cong, who also served as the Company's CEO, and Hess, as Innogy NV's designee, from March 2017 through at least February 2019.[44] The third directorship was never filled.[45]

P.      On the same day that Cong executed the March Resolutions, iTy entered into an agreement to issue and sell to Innogy NV 625,000 shares of Series

---

[40] Compl. ¶ 44.

[41] *Id.* ¶¶ 45–46.

[42] Ex. E.

[43] Compl. ¶ 50; Ex. E.

[44] Compl. ¶ 50. Rogers alleges that, as of the filing of his complaint in this court, Cong "serv[ed] as the sole member of ITy's Board." Compl. ¶¶ 113, 153, 171.

[45] *Id.* ¶ 50.

A preferred stock.[46]  On September 21, 2017, Innogy NV purchased an additional 549,568 shares of Series A Preferred Stock.[47]  Since September 2017, Innogy NV and Cong have been "the majority stockholders of iTy's Series A preferred stock and iTy's common stock."[48]

Q.      In May 2018, iTy entered the European market in collaboration with Innogy.[49]  Rogers alleges that the collaboration gave Innogy SE access to Plause and leveraged the collaboration to build software that "relies on the same technology developed by Rogers that forms the core of iTy's intellectual property."[50]

R.      On June 11, 2018, Cong, in his capacity as iTy's CEO, executed on behalf of iTy a contract with Pacific Gas & Electric Company ("PG&E") "to prepare, diagnose, pilot, implement, stabilize and build the ability for PG&E to self-perform significant improvements in Health & Safety and Operational Efficiencies."[51] Unable to perform the contract on its own, iTy "engaged Innogy to service the PG&E Contract with the use of iTy's Plause software."[52]  iTy's contract with Innogy

---

[46] *Id.* ¶ 49.

[47] *Id.* ¶ 51.

[48] *Id.* ¶ 52.

[49] *Id.* ¶ 55.

[50] *Id.* ¶ 59.

[51] Ex. I.

[52] Compl. ¶ 70.

required the Company to "compensate Innogy on a quarterly basis—regardless of whether iTy received payment from PG&E."[53]

S.      Cong executed the contract three days after the California Department of Forestry and Fire Protection released a report finding that PG&E equipment was the root cause of 12 fires that had torn through Northern California in October 2017.[54]   The report culminated in what Rogers alleges were foreseeable results: PG&E later filed for bankruptcy and never paid iTy for its work.[55]   iTy then found itself owing Innogy approximately $700,000 for its contractor services.[56]

T.      The failure of the PG&E contract brought iTy to the brink of insolvency.  On December 4, 2018, the Board met to discuss the Company's cash position and potential dissolution, noting a lack of "significant customer traction" and "declining support within Innogy to expand its relationship with the Company."[57]   In the event of iTy's dissolution, Innogy would be "likely to receive all of iTy's assets" as iTy's largest creditor.[58]

---

[53] *Id.*

[54] *Id.* ¶ 67.

[55] *Id.* ¶ 71.

[56] *Id.*

[57] Ex. L.

[58] Compl. ¶ 151.

U.     Rogers's original California complaint contained nine counts, including a claim asserting fraud against Cong and to inspect books and records of iTy under California law.[59]  iTy and Cong moved to stay the action, arguing that the forum selection clause in iTy's certificate of incorporation required the claims to be brought in Delaware.[60]  Rogers opposed the motion on grounds that the forum selection provision in the CSPA required the claims to be litigated in California.[61]  On July 7, 2017, the California trial court held that the forum selection clause in the CSPA covered two of Rogers's claims, but that the remaining claims were subject to the Delaware forum selection clause in the Company's certificate.  Thus, the California trial court stayed the California action to permit Rogers to assert his remaining claims in Delaware.[62]  Rogers appealed that decision, and on February 14, 2019, California's Sixth District Court of Appeal held that the forum selection provision in the CSPA covered not only the two claims that the trial court identified, but also a breach of fiduciary duty claim against Cong.  The appeals court reversed the stay and remanded the case to the trial court to decide, in light of the appeals court's ruling, (1) whether the forum selection clause in the certificate should be enforced

---

[59] Ex. 1 to FEV US's Opening Br ¶¶ 23-27, 63-67.

[60] Compl. ¶ 102.

[61] *Id.*

[62] *Id.* ¶ 103; Ex. P at 10.

as to the remaining six causes of action and (2) if so, whether the California action should be stayed.[63]

V. On July 11, 2019, Rogers filed an amendment to his complaint in the California action, naming Hess, Innogy SE, and Innogy NV (aka FEV US), previously designated as "Does," as defendants.[64] On August 2, 2019, Rogers filed a First Amended and Supplemental Complaint in the California action (the "California Amended Complaint").[65] The California Amended Complaint added four causes of action to the original California complaint and specified claims asserted against Hess, Innogy SE, and Innogy NV.[66]

W. On September 9, 2019, iTy, Cong, and Hess moved to stay the California action pursuant to the forum selection clause in iTy's certificate. Innogy SE and Innogy NV also moved for a stay and for dismissal of certain claims on the same grounds.[67] On November 15, 2019, the California trial court concluded that seven claims in the California Amended Complaint were subject to the Delaware

---

[63] Compl. ¶ 104; Ex. P at 24–25.

[64] Ex. A to Pl.'s Ans. Br.

[65] Ex. Q.

[66] *Id.* The California Amended Complaint also asserted claims against Cong, Innogy NV and Innogy SE as majority shareholders of iTy for (1) breach of fiduciary duty as majority shareholders and (2) violations of Section 17200 of the California Business Professions Code § 17200, and against Cong and Hess as iTy directors for (3) breach of fiduciary duty and (4) violations of Section 17200.

[67] Ex. R at 6.

forum selection provision.[68] The court granted the motion to stay solely as to those claims, denied the motion to dismiss, and lifted the stay of discovery.[69]

X.    On November 12, 2020, Rogers filed his Complaint in this court.[70] FEV US and Hess moved to dismiss the Complaint on December 10, 2020 and January 15, 2021, respectively.[71]

Y.    On or around November 2, 2021, Rogers moved to file a third amended complaint in the California action (the "California TAC").[72]  The California TAC sought to expand the factual allegations in that action and to allege a new claim against FEV US and Innogy SE for aiding and abetting Cong's breaches of fiduciary duty.  On December 27, 2021 (three weeks after oral argument on the present motions), the California court entered an order that, among other things, granted Rogers's motion to amend the complaint to add a claim against FEV US for aiding and abetting Cong's alleged breaches of fiduciary duty.[73]  In granting leave to

---

[68] *Id.* at 14.

[69] *Id.* at 16–17.

[70] Dkt. 1.

[71] Dkt. 11, 28.  The Company and Cong filed an Answer and Affirmative Defenses.  Dkt. 27.  E.On SE, FEVMG, and Innogy SE (together, the "International Defendants") moved to dismiss on March 1, March 10, and March 17, 2021, respectively, pursuant to Court of Chancery Rules 12(b)(2) and (6).  Dkt. 33, 34, 37.  On July 6, 2021, the court granted the International Defendants' motion to stay jurisdictional discovery and briefing on the International Defendants' motions to dismiss.  Dkt. 42–43, 47.

[72] *See* Ex. 1 to Dkt. 60 at 18–19.  The California TAC is not in the record in this action.

[73] Ex. 1 to Dkt. 60.

amend, the court held that the aiding and abetting claim was not time-barred and, instead, related back to at least Rogers's July 2019 amendment to the complaint, which added FEV US and Innogy SE as named defendants.[74] The court reasoned that "FEV [US] has been on notice of Plaintiff's general theory that FEV [US] was working with Mr. Cong to injure Plaintiff—both before 2017 and after 2017—in these ways since it became a defendant to this action."[75] FEV US submitted a post-hearing letter to this court arguing that the California court's December 27, 2021 order has "no relevance" to FEV US's motion to dismiss pending before this court.[76]

Z.    The Delaware Complaint contains nine counts. Count I is a fraud claim against Cong. Count II is an aiding and abetting fraud claim against Hess and Innogy. Count III is a negligent representation claim against Cong. Count IV is a breach of contract claim against Cong. Count V is a breach of fiduciary duty claim against Cong and Hess. Cong VI alleges Innogy aided and abetted breaches by Cong and Hess of their fiduciary duties. Count VII is an unjust enrichment claim against all Defendants. Count VIII alleges that Cong and Hess violated California's Unfair Competition Law. Count IX alleges civil conspiracy against all Defendants. Counts V and VI arise under Delaware law; all other claims arise under California law.

---

[74] *See id.* at 15 & n.8.

[75] *Id.* at 17.

[76] Dkt. 61.

AA.  FEV US and Hess have moved to dismiss all of the claims against them pursuant to Court of Chancery Rule 12(b)(6).  FEV US argues that all of the claims against it must be dismissed because they are time-barred; Hess argues that Count IX must be dismissed against him for that reason as well.[77]  In addition, FEV US argues that Counts II, VII, and IX must be dismissed on the merits.  Hess argues that all claims against him must also be dismissed on the merits.

NOW, THEREFORE, the court having considered the parties' submissions, IT IS HEREBY ORDERED, this 31st day of March, 2022, as follows:

1.    On a motion to dismiss for failure to state a claim under Court of Chancery Rule 12(b)(6), (a) all well-pleaded factual allegations are accepted as true; (b) even vague allegations are well-pleaded if they give the opposing party notice of the claim; and (c) the court must draw all reasonable inferences in favor of the non-moving party.  *Savor, Inc. v. FMR Corp.,* 812 A.2d 894, 896-97 (Del. 2002).  "[D]ismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible to proof."  *Id.* (internal quotations omitted).

---

[77] Hess has not sought to dismiss any other counts as time barred.

### A. Application of the Delaware Savings Statute

2. Under 10 *Del. C.* § 8121, a claim arising outside of Delaware is time-barred at the earlier of (i) the expiration of the claim under Delaware law or (ii) the law of the state where the cause of action arose. Here, Counts II, VII, and IX arise under California law; Count VI, which alleges FEV US aided and abetted Cong and Hess's breaches of fiduciary duty, arises under Delaware law. Neither FEV US nor Hess argues that the applicable statute of limitations for the claims asserted under California law is shorter than that under Delaware law. Thus, the statute of limitations/laches analysis turns on the applicable limitations periods under Delaware law.[78]

3. The parties do not dispute that the applicable analogous statute of limitations for each of the claims at issue on this motion is three years. FEV US asserts that the "face of the Complaint makes clear that Rogers was actually aware of the alleged wrongdoing in November of 2016,"[79] when he learned Cong had decided to keep iTy operational, and certainly by the time Rogers filed his original California complaint on February 17, 2017.[80] Thus, according to FEV US, the

---

[78] *See generally Kraft v. Wisdomtree Inv., Inc.*, 145 A.3d 969, 983 (Del. Ch. 2016) (providing the applicable framework in this court for determining whether claims are time-barred).

[79] FEV US's Opening Br. 12.

[80] *Id.* at 13.

relevant statute of limitations expired, at the latest, on February 17, 2020—approximately nine months before Plaintiff filed his Delaware Complaint on November 12, 2020.

4. Plaintiff argues that his claims were tolled under Delaware's Savings Statute while he pursued his claims in California court. The Savings Statute, 10 *Del. C.* § 8118(a), "provides exceptions to the applicable statute of limitations in certain instances where the plaintiff has filed a timely lawsuit, but is procedurally barred from obtaining a resolution on the merits." *Reid v. Spazio*, 970 A.2d 176, 180 (Del. 2009). Section 8118(a) states:

> If in any action duly commenced within the time limited therefor in this chapter, [1] the writ fails of a sufficient service or [2] return by any unavoidable accident, or [3] by any default or neglect of the officer to whom it is committed; or [4] if the writ is abated, or the action otherwise avoided or defeated by the death of any party thereto, or for any matter of form; or [5] if after a verdict for the plaintiff, the judgment shall not be given for the plaintiff because of some error appearing on the face of the record which vitiates the proceedings; or [6] if a judgment for the plaintiff is reversed on appeal or a writ of error; a new action may be commenced, for the same cause of action, at any time within one year after the abatement or other determination of the original action, or after the reversal of the judgment therein.

5. Section 8118(a) "is designed to allow a plaintiff . . . one year to file a second cause of action following a final judgment adverse to his position if such judgment was not upon the merits of the cause of action." *Id*. at 181 (quoting *Gosnell v. Whetsel*, 198 A.2d 924, 926 (Del. 1964)). One purpose of the statute is to avoid the waste and inefficiency of pursuing separate, concurrent lawsuits in two

16

jurisdictions at the same time. *Id.* at 181–82. Another purpose is "to mitigate against the harshness of the defense of statute of limitations where through no fault of his own a party finds his cause of action technically barred by lapse of time because a careless oversight of counsel would otherwise cause the party to be denied his day in Court." *Moyer v. Markel*, 1989 WL 147472, at *2 (Del. Super. Ct. Oct. 30, 1989). The statute is therefore to be liberally construed "by giving due consideration to notions of equity." *Reid*, 970 A.2d at 181.

6.     "The Delaware savings statute is only triggered when the original action is abated." *Parker v. Gadow*, 2005 WL 1952938, at *1 (Del. Super. Ct. Aug. 5, 2005), *aff'd*, 893 A.2d 964 (Del. 2006). "'[A]t common law, an abatement was an overthrow of a suit, the equivalent of a dismissal'" and "'in equity . . . an interruption or suspension of a suit, the equivalent of a stay of proceedings.'" *Graleski v. ILC Dover*, 26 A.3d 213 (Del. 2011) (TABLE) (quoting *Baer v. Fahnestock & Co.*, 565 F.2d 261, 263 (3d Cir. 1977)). Thus, "the question becomes whether [Rogers's claims were] dismissed or stayed 'for any matter of form,' so as to entitle him to an extra year to re-file that petition." *Id.*

7.     The California Court granted a partial stay on July 7, 2017, concluding that two of Rogers's claims were outside the Company's exclusive forum provision in the iTy certificate and could proceed in California. In affirming in part and reversing in part on February 14, 2019, the appeals court determined that a third

17

claim could proceed in Delaware and directed the trial court to determine whether, in light of the appeals court's decision, any of Rogers's other claims should proceed in California or Delaware.

8. Rogers then amended his California complaint to add FEV US, Innogy SE, and Hess as named defendants, and shortly thereafter asserted specific claims against them in the California Amended Complaint. The California trial court then followed the appeals court's remand order and determined which claims could proceed in California and which claims should proceed in Delaware. That decision is embodied in the California trial court's November 15, 2019 order, which granted the motion to stay the seven claims in the California Amended Complaint that were subject to the Delaware forum selection provision.[81] None of the parties in the California action appealed that decision. Thus, the California action was abated no earlier than November 15, 2019. Rogers filed his Delaware Complaint on November 12, 2020, which fell within the one-year grace period.

9. The Defendants do not argue that the Delaware Complaint was untimely for purposes of applying the Savings Statute. Instead, they contend that

---

[81] The California trial court did not dismiss the claims that were subject to the Delaware forum selection clause in the certificate, noting that the California Supreme Court has "'consistently held that except in extraordinary cases a trial court has no discretion to dismiss an action brought by a California resident on grounds of forum non conveniens,' and should instead stay the action." Ex. R at 16-17 (quoting *Archibald v. Cinerama Hotels* 15 Cal. 3d 853, 857-58 (Cal. 1976)).

the claims asserted against them in the Delaware Complaint do not fall within the scope of what Section 8118(a) permits. Specifically, Defendants argue that Counts II, VI, VII, and IX in the Delaware Complaint do not constitute "the same cause of action." 10 *Del. C.* § 8118(a).

10. The Savings Statute "does not apply if the parties in the new action are not the same as the ones in the prior action, if the new action is brought against a different defendant than was the first one, or an attempt is made to add defendants not sued in the original action." *Skye Mineral Inv'rs, LLC v. DXS Capital (U.S.) Ltd.*, 2021 WL 3184591, at *9 (Del. Ch. July 28, 2021) (quoting 51 Am. Jur. 2d *Limitation of Actions* § 256 (Nov. 2019)). The Savings Statute "applies principally to a suit that is already commenced against the same defendant but which fails to reach a final effective judgment on the merits because of one of the reasons enumerated in the statute." *Vari v. Food Fair Stores, New Castle, Inc.*, 199 A.2d 116, 119 (Del. Super. Ct.), *aff'd*, 205 A.2d 529 (Del. 1964).

11. Defendants argue that the Savings Statute cannot apply because none of the claims asserted against FEV US and Hess in the Delaware Complaint were asserted against them in the California action. Thus, these claims were not stayed

19

by the California court and, thus, the argument goes, were not saved under the Savings Statute because they are not the same cause of action.[82]

12. The parties did not address controlling authority on this issue. Former Chief Justice Strine, as Vice Chancellor, directly confronted the question of what constitutes the "same cause of action" under the Savings Statute in *Shandler v. DLJ Merchant Banking, Inc.*, 2010 WL 2929654, at *19 (Del. Ch. July 26, 2010); *see id.* at *18 (observing that the parties in that case "were unable to find any case law shedding light on what the General Assembly meant by the term 'cause of action' in that statute").

13. In a careful analysis, then-Vice Chancellor Strine held that the Savings Statute operates to salvage any claim filed within the savings period that "arose out of the conduct, transaction or occurrence in the original pleading." *Id.* at *19 (internal quotations omitted). The test is the same as that employed by the court when granting a party leave to amend a complaint under Rule 15(c)(2). *Id.* Under the Rule 15(c)(2) analysis, Delaware courts "focus[] upon whether the amended claim arose out of the specific conduct of the Defendant alleged in the original complaint." *Bailey v. Brown*, 1999 WL 167785, at *6 (Del. Super. Ct. Mar. 10, 1999) (emphasis omitted); *see, e.g.*, *Agspring Holdco, LLC v. NGP X US Hldgs.*,

---

[82] *See* FEV US's Reply Br. 7 ("[N]one of the claims stayed so that they could be filed in Delaware were asserted against FEV" (formatting omitted)); Hess's Rep. Br. 21 ("[T]he California Action did not include a civil conspiracy claim against Hess.").

20

L.P., 2020 WL 4355555, at *11 (Del. Ch. July 30, 2020) (holding that "[t]he same transaction and conduct underlying the fraud in both the Original Complaint and the current Complaint also underlies the other three claims asserted against [the defendant] in the Complaint, *i.e.*, the two claims based on secondary theories of fraud (aiding and abetting and conspiracy) as well as the claim for breach of fiduciary duty); *Shandler*, 2010 WL 2929654, at *19 (Del. Ch. July 26, 2010) (holding that aiding and abetting breach of fiduciary claim against bank that had submitted fairness opinion to board of directors was not-time barred because "KeyBanc's conduct in the same Transaction supports an additional legal theory as to why any harm suffered by [plaintiff] in that Transaction should be remedied by KeyBanc"); *but see Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 2012 WL 3201139, at *18 (Del. Ch. Aug. 7, 2012) (holding that "separate independent violation of the same contract provision does not 'arise' out of the same conduct, transaction or occurrence as did the first, unrelated violation"). "The crucial consideration is whether a defendant had notice from the original pleadings that the plaintiff's new claim might be asserted against him." *Telxon Corp. v. Bogomolny*, 792 A.2d 964, 972 (Del. Ch. 2001).

14. The California Amended Complaint alleges Cong and Rogers reached an oral agreement to dissolve and wind up the Company in October 2016, but that Cong secretly sought to continue operating the Company by "soliciting bids for a

21

new round of investors," "entering into terms [sic] sheets with investors," "revoking Rogers's access to company information," "orchestrating Rogers's removal from the Board," undertaking a "series of resolutions . . . to cement Rogers' isolation from iTy and put himself and INNOGY in total control of the company," and "authorizing a 'management rights letter' with [FEV US] in connection with the sale and issuance of shares."[83] After Innogy acquired its shares in March 2017 and designated Hess as a director, "Hess and Cong, as the only members of the Board of iTy, have steered iTy to act in Innogy NV's and/or Innogy SE's interests."[84] In May of 2018, "unbeknownst to Rogers, Cong and Hess created a European subsidiary for Plause, Plause EU,"[85] and Innogy is currently developing a project based on the "same technology developed by Rogers and formed the core IP for iTy."[86] iTy, with Cong and Hess as the sole directors, caused the Company to enter into a contract with Innogy to service a contract with PG&E, as a result of which "iTy was obligated to

---

[83] California Amended Compl. ¶¶ 23-33.

[84] *Id.* ¶ 35.

[85] *Id.* ¶¶ 39–40.

[86] *Id.* ¶ 65.

pay over $700,000.00 to Innogy despite it being one of iTy's main customers,"[87] leaving iTy "headed for insolvency."[88]

15.    Based upon the standard articulated in *Shandler*, the claims asserted against FEV and Hess in Counts II, VI, VII, and IX arose out of the same conduct, transaction, or occurrence as the claims in the California Amended Complaint. As in *Shandler*, the claims for aiding and abetting fraud and breach of fiduciary duty are secondary theories of liability arising from a direct claim asserted in the other action to which FEV US and Hess were parties. The Delaware Complaint bolsters those allegations with the October 2016 email exchange between Cong and Innogy, discussing Hess's effort to "spin-off his activities into a new venture" if they could "demonstrate a strategic bridge and combination" between iTy and what Hess was doing at Innogy.[89]

16.    Notably, in its decision granting Rogers's motion for leave to amend to assert a claim against FEV US for aiding and abetting Cong's alleged breaches of fiduciary duty, the California Court rejected FEV US's argument that it did not relate back to the earlier complaint:

---

[87] *Id.* ¶ 58. Plaintiff's claims relating to Hess's execution of a power of attorney to permit Innogy employees to create a European subsidiary for Plause and the entry into the PG&E contract concern conduct that occurred within the analogous three-year statute of limitations and are not time-barred.

[88] *Id.* ¶ 56.

[89] Ex. H.

FEV has been on notice of Plaintiff's general theory that FEV was working with Mr. Cong to injure Plaintiff—both before 2017 and after 2017—in these ways since it became a defendant to this action . . . . . [W]hile the proposed [Third Amended Complaint] alleges new evidentiary details concerning FEV's involvement in the injury to Plaintiff and asserts a new legal theory of recovery against it, the amendment does not seek to recover against FEV upon a new set of facts entirely unrelated to those asserted in earlier pleadings . . . . The Court disagrees with FEV that Plaintiff has added in the [proposed Third Amended Complaint] a completely-new theory of liability that is wholly unrelated to Plaintiff's previous theory of liability.[90]

17.     In my view, the California court's analysis is consistent with the *Shandler* framework and I find it persuasive. It is also faithful to the Supreme Court's admonition that in construing the Savings Statute, the court should give "due consideration to notions of equity." *Reid*, 970 A.2d at 181. Deciding these cases on the merits would also be consistent with the statute's "public policy preference for deciding cases on their merits." *Id.*

18.     To be sure, this decision merely denies the motion to dismiss on grounds of laches and is not intended to address the merits of the claims. As explained below, I defer further consideration of the merits for another day.

---

[90] Ex. 1 to Dkt. 60 at 17 (internal quotations omitted).

**B. The Court Exercises its Inherent Discretion to Stay the Remainder of this Action and to Defer Consideration of the Remainder of the Motions to Dismiss.**

19. Having delved into the procedural history of this case that originated in California more than five years ago and developed an understanding of the current posture of that action, I have concluded that a stay of this action is warranted. It is well established that trial courts have broad discretion in managing their dockets. *See Goode v. Bayhealth Med. Ctr., Inc.,* 931 A.2d 437 (Del. 2017) (TABLE) ("A trial judge has broad discretion to control scheduling and the court's docket."). "The Court of Chancery possesses the inherent power to manage its docket, including the discretion to stay a case pending the resolution of another case on the basis of 'comity, efficiency, or common sense.'" *Cummings v. Estate of Lewis*, 2013 WL 99417, at *10 (Del. Ch. Mar. 14, 2013) (quoting *SRG Global, Inc. v. Robert Fam. Hldgs., Inc.*, 2010 WL 4880654, at *10 (Del. Ch. Nov. 30, 2010)); *accord Paolino v. Mace Security Int'l, Inc.,* 985 A.2d 392, 397 (Del. Ch. 2009). Each of those factors counsel in favor of a stay of this action.

20. Both this case and the California action involve claims arising from the same conduct. The California courts have lived with the claims arising from this dispute since 2017. There has been extensive motion practice already as to venue

25

and amendment of the pleadings in that action.[91] In the November 15, 2019 order, the court directed the parties to enter a schedule on the "defendants' anticipated demurrers" to the complaint.[92] In its December 27, 2021 order, the California court addressed a motion to amend and a motion to compel discovery.[93] By contrast, this action is only at the pleadings stage.

21. Principles of comity dictate that, "where possible, [the court should] avoid[] situations where two courts of competent jurisdiction end up aligned on a collision course, which could result in conflicting judgments." *Rosen v. Wind River Sys., Inc.*, 2009 WL 1856460, at *7 (Del. Ch. June 26, 2009). Litigating the issues in these two actions simultaneously on opposite coasts is antithetical to that principle and risks inconsistent rulings. It would also be inefficient for the parties and the courts in both jurisdictions to devote resources simultaneously to litigate these claims in a dispute arising from the same conduct. Notably, seven of the nine counts of the Delaware Complaint are governed by California law. The two Delaware law claims for breach of fiduciary duty and aiding and abetting those breaches of duty do not present novel issues which warrant this court to move forward at this time. *Cf. Ryan v. Gifford*, 918 A.2d 341, 350 (Del. Ch. 2007) (denying a *McWane*-based

---

[91] *See* Exs. P, R; Ex. 1 to Dkt. 60 (adjudicating venue motions).

[92] Ex. R at 17.

[93] Ex. 1 to Dkt. 60.

stay where Delaware had an overwhelming interest in resolving questions of first impression involving option backdating); *In re Lordstown Motors Corp. S'holder Litig.*, 2022 WL 678597, at *3 (Del. Ch. Mar. 7, 2022) (denying motion to stay litigation involving important questions of Delaware law in the context of de-SPAC transactions).

22.     Common sense dictates that only one action should move forward. Given the advanced stage of the five-year-old California action, the California courts' familiarity with the issues, and the absence of any novel issues of Delaware law that warrant this court moving forward at this time, it makes sense that the California action proceed ahead of this case.  I am mindful that Plaintiff chose California as his preferred venue.  The Defendants successfully obtained a stay as to claims that the California courts determined are subject to the Company's forum selection provision in the certificate.  As a stockholder in a Delaware corporation, Rogers "assent[ed] to be bound" by the forum selection clause when he acquired the Company's stock.  *Boilermakers Loc. 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 940 (Del. Ch. 2013).  Nevertheless, staying this later-filed action as a discretionary act of docket management does no harm to the well-established notion that, all else equal, "the Court has to respect the forum that the plaintiff has chosen to bring their suit." *Fisher v. Gov't Emps. Ins. Co.*, 1999 WL 1427809, at *2 (Del. Super. Ct. Dec. 10, 1999).  Accordingly, I am exercising my inherent discretionary authority to stay

27

this action. Therefore, I defer decision on the motions to dismiss on the merits pending resolution of the claims in the California action.

/s/ Paul A. Fioravanti, Jr.
Vice Chancellor